Next case will be 093012, George Wingo v. United States Postal Service. Mr. Camp. May it please the court. My name is Hope Camp and I represent Mr. George Wingo. In this case Mr. Wingo is here because he bargained far and got a contract that enabled him to present an appeal for any notice of termination that he got after he entered into this last chance settlement agreement, which was an unusual last chance settlement agreement, different from any of those that I read in any of the contracts that were cited in the respondent's brief. This agreement required that he be judged by the standards that were set out in the postal regulations recited and listed in that last chance settlement agreement. And contrary to the statements made in the respondent's brief on pages 30 and 31, there was no finding by either Judge Ringler, the administrative judge, nor in the merit systems protractions finding that he materially violated that agreement. I know there's a whole dispute here on whether this was a jurisdictional question or a merits question, but if we leave that aside, the AJ in this case did make credibility determinations. She did make findings of fact. And so whether it's a merits determination or a jurisdictional determination, your client loses and there's hardly any basis at all, is there, to challenge those credibility disputes and those factual findings. And I'm addressing those issues right at the beginning. I'm trying to say to the Court here that this administrative judge and the Merit Protection Board didn't address the issues that it was supposed to have addressed as required by the last chance protection, this agreement that Mr. Ringo entered into. But I don't understand. The AJ went through the series of customer complaints and credited certain witnesses and not. I mean, what other factual inquiry would be relevant to determining whether or not there was a breach of the last chance agreement? If one looks at what the AJ did, the AJ made no connection between these so-called customer complaints and the standards against which the conduct, Mr. Ringo, was to be judged and the last chance settlement agreement. I don't understand what you mean. What standards would you have? What should she have done that she didn't do? Let's just look at the last chance settlement agreement. On page 3 of that agreement, which is page 29 in my appendix, the appellant must perform his daily duties in a manner consistent with the employee labor relations manual section 60, that's 661 through 665. You look at his findings. There is no reference to any of those. Counsel, I guess I just didn't see this. I beg your pardon? Is your argument on appeal that the AJ found him guilty of something, but the thing that he was found guilty of isn't what he agreed to do properly? Is that what your argument is? I didn't hear you. I'm sorry. Is your argument on appeal that the AJ found him guilty of something, but the thing the AJ found him guilty of is not what he promised to be good at doing? I don't think the AJ found him guilty of the things that he was committed to do in the last chance settlement agreement. You're saying what he agreed to do in the last chance settlement agreement at paragraph C, namely sections 660 through 665, 814.2 responsibilities, handbook PO-603, rural carrier duties and responsibilities, you're saying none of those sections have to do with delivering mail, not breaking porcelain bowls, refusing to pick up mail, all of those things. The last chance settlement agreement is a contract. That's a deal that Mr. Wingo made with the Postal Service. They were bound by that, and I think there was a duty on the part of the Postal Service and the part of this AJ to connect his findings to what he said Mr. Wingo did. He didn't do that in his findings, and the board in adopting his findings didn't do that. I think as a matter of law he failed, therefore, to find him guilty of what the last chance settlement agreement required him to be responsible for. I'm not sure I hear the answer to Judge Moore's question in your response, however. Is it your view that what he was required to do by these citations to the manual did not cover all of the specifications here, which dealt with failure to collect outgoing mail, failure to protect the mail, failure to deliver parcels? Are you contending that those obligations are not what are included in paragraph C of the last chance agreement? Is that your position, that there's different? In the findings, he did not make findings. Well, why don't you answer my question first, and then you can explain it. I'm trying to do that, Your Honor. Okay. Is it your contention that what he was charged with doing in the specifications does not coincide with the obligations that are contained in section C? If I'm understanding your question, and I may not be, the AHA failed to make a finding that coincides with the responsibilities that Mr. Wingo had under the last chance settlement agreement, that the failures on Mr. Wingo's part were material violations of the last chance settlement agreement. There is not a word in his findings that there's a material violation of that settlement agreement. But I guess what I'm unclear on is, assuming you're correct, it would only be arguably harmless error if indeed what's required under C is significantly different from what's charged in the specification. Are you saying that the sections of the manual that he's obligated to perform under C cover matters that are not consistent with what he's charged with violating in the specification? If I read the cases cited by the Respondent, the Link case, the Gibson case, and the Matthews case, all of them focus on the importance of finding material violations. There's no finding of a material violation. Well, there is, unless there's a disconnect between what's referenced in C and what's referenced in the specifications. That's why I think I keep asking you in different ways, whether it's your position that what's referenced in C refers to conduct that's different than what's charged in the specification. Then why couldn't the AHA? Well, the question is yes or no. Can't you say yes or no? No, they didn't find the material violation. And I think that there is a difference, Your Honor. Okay. Why don't you tell me about the difference then? What is the difference between the sections of the manual referred to in C and the kind of conduct that's referenced in the specification? Well, if we look at what he has found in the particular violations, first of all, we find that he says that Mr. Wingo was – he presented a serious danger to the children in the neighborhood. He finds that on page 6 of his decision. He attributes that to the testimony of a witness, Mrs. Dixon. That is not what she testified to. She testified that there were children in the neighborhood who lived within four or five houses. Okay. So you're pointing to one example. Excuse me. I was in the middle of answering, if I could. May I finish that answer? That's not the testimony of the witness. You respond to the judge's question. All right. I will answer that question. What is the question, Your Honor? The question was, one of the instances that the AJ found, Specification No. 5, unacceptable conduct with the station manager, Cuervas, and it goes into detail about how he ignored Mr. Cuervas' request and spoke rudely to Mr. Cuervas and refused to pick up mail and do things. This is Specification No. 5 of the charges against your client, unacceptable conduct with the station manager. As I look at Section 665, which is one of the sections you explicitly disclosed and said look at page 3 of the Last Chance Agreement, he agreed to abide by Section 661 to 665. So I'm now looking at Section 665.13, Discharge of Duties. Employees are expected to discharge their duties, assign duties conscientiously and effectively. 665.15, also covered by the Last Chance Agreement, employees must obey the instructions of their supervisor at all times. 665.16, Behavior and Personal Habits, and it goes through the detail of how employees must follow instructions, follow duties, engage themselves professionally and appropriately. How is Specification No. 5, which the AJ found to have been violated as a matter of credibility and fact, in terms of your client's conduct with Mr. Cuervas, not a direct violation of 665? If you look at page 6 of the judge's decision, you see that he says, a number of times he says, that she failed to do this, that he attributes testimony to the witnesses, that the witnesses did not give. He makes findings about what the witnesses said about the conduct of Mr. Wingo, which is not the testimony of the witnesses. I'm saying to this court that he manufactured testimony in order to create a vision of what Mr. Wingo was doing that he did not do, and I invite the court to look at the testimony and compare it to what his findings were in specific instances to evaluate whether or not he in fact had the basis for some of his findings. Now, I do not question that there are some findings for what there's some basis for some of his findings, but why did he have to go beyond the testimony? Why did he have to expand beyond the testimony that is there? You're into your rebuttal time. Would you like to save it and come back after the government's argument? Yes, I have five minutes. You have four minutes and 22 seconds. Good morning, Your Honors. Michelle Windmuller for the Respondent, United States Postal Service. I'd like to respond to the point that my esteemed opposing counsel was addressing, which was the issue of materiality and whether the judge made findings with regard to it. I submit that the judge did here. I agree that the word material was not used by the judge when describing the violations. However, that does not mean that there wasn't a finding of materiality, and I would point you to a couple of things, actually three in specific. The first is on page four of the initial decision. After describing each of the six specifications, the A.J. says, basically gives his interpretation of what the various rules and regulations cited in the Notice of Proposed Removal and described in my brief, describes how he interpreted those to me. The agency's personnel rules and policies require, amongst other things, that carriers collect outgoing mail, non-destructively deliver incoming mail, drive safely, and act professionally. Second, the A.J. then went on in great detail, and after making those virtually unreviewable credibility findings, to find that Mr. Wingo did violate each of those rules through his behavior in ways that were serious and repeated. In other words, not inconsequential or immaterial. Third, the A.J. found on page, I believe it's eight of the opinion, I'm sorry, top of page nine, that the particular violation here and the action taken was consistent with the LCA, which would necessarily mean that there was an included finding of materiality since the LCA required that. I would also point out that one thing that Mr. Camp has noted is that there are some evidence to support each of the specifications that were listed here. So even under his view that the A.J. went beyond what the testimony requires, which I disagree with and I think that the evidence does bear out the A.J.'s findings, even if you take that into account, he's still saying that there's some evidence to support those findings, and under the substantial evidence standard of review, that is all that is necessary. Can you walk me through how applying Gibson and some of our other precedent, this works as a procedural matter, that this, is it your view that this is completely a jurisdictional inquiry at this stage? Yes, Your Honor, and I do believe that this is pretty much on all fours with Gibson, in that Gibson says that if you sign a last chance agreement and it has a waiver in it saying that you're not going to challenge the removal, and here he had indicated he's not challenging the removal, and if he violated the rules, that removal would be reactivated. So this is that same removal that he was not allowed to challenge. If you violate that, there's only jurisdiction if, and the case law says that the burden of proof is on the petitioner in this case, if he proves that he didn't violate the agreement, if he proves that the agency materially did violate it on its own, or if somehow entering that agreement in the first place was not voluntary. There's no dispute here over that third point. But an individual employee can't either deprive a court of jurisdiction or create jurisdiction, right? I mean, isn't jurisdiction something that's set in a court by statute? Yes, Your Honor, and this court has held before both in Gibson and in Link, that this particular situation does, I agree with the general principle, but I do believe that this court's decisions in Gibson and Link indicate that the court is deprived of jurisdiction over the propriety of the penalty. Note that the court, the A.J., still took jurisdiction here, didn't say that he was doing so, but in effect did, took jurisdiction to determine whether Mr. Wingo actually violated this agreement, thus bringing, I'm sorry, thus removing any entitlement he might have to review of the penalty. I don't understand that. He took jurisdiction to determine the jurisdictional issue? I think it's somewhat strange, Your Honor, he doesn't use the word jurisdiction, but he doesn't ignore the question of whether there was a violation of the agreement here, because obviously if there wasn't a violation of the agreement, then there would be no waiver. Well, is this a threshold jurisdictional inquiry? Like, I mean, in a lot of cases, we've got a non-removal, that somebody arguably retires or voluntarily leaves, and then they try to remove an action, and so it's a threshold matter on jurisdiction. They have to establish that indeed they were, in essence, really removed in order to get jurisdiction in the first instance. Is this sort of analogous to that? I think somewhat, Your Honor. I think it is a question of whether the Board gets jurisdiction to review whether there's a nexus to the penalty or a propriety of the penalty as reasoned and reasonable under Douglas, which, by the way, is not something here that Mr. Wingo has argued, that it was somehow improper not to consider the propriety or impropriety of the penalty. His focus was entirely on burden of proof as to whether he violated the agreement in the first place. I would note, however, that even if it wasn't seen as a jurisdictional issue in quite the same way as in those non-removal cases, we could look as good guidance to Judge Plaker's concurring opinions in both Link and Gibson, where Judge Plaker has indicated that it's somewhat a fallacy to call this jurisdiction because in reality the A.J. is taking a look at the issue of a violation. And in a sense, it's almost like a breach of contract type of action. But in the end, it has no real effect so long as the A.J. still goes ahead to determine that the evidence supports the finding of violation regardless of who the burden of proof was on. And that's what happened here. But doesn't who the A.J. thinks has the burden of proof sort of color the inquiry here? I mean, it's almost like asking someone to prove a negative, right? How can one prove, one has to prove that something didn't happen? I agree that it could put the petitioner or in a particular case the appellant in a particular difficulty. However, here that wasn't a problem, although it could color the way the A.J. looked at it. In fact, the A.J. went on and fully considered all of the evidence after hearing and made specific credibility findings, I believe on page 8 of the opinion, that he specifically credited the customers and Mr. Wingo's supervisor, Mr. Cuevas, over the testimony of Mr. Wingo and his witnesses. So he wasn't merely saying, I find he didn't come forth with enough to prove that he didn't violate this. He actually goes and says, what these customers said happened, happened, and thus it was a violation of the agreement. If your honors have any more questions, I'd be happy to answer them. Otherwise, I'll rest of my brief. All right. Thank you. Mr. Pan. This case is very troubling to me. It's the first one I've ever had the opportunity and the privilege to argue before this court. Troubling in the sense that this man has 14 years with the Postal Service, and he had bargained hard for this agreement that he made. And it seemed to me upon my reading of it and looking at the way it was handled that he was not given the benefit of the agreement that he bargained for. It seemed to me that he was entitled to have the Postal Service establish by a hearing before the Merit System Protection Board whether or not he had committed a material breach of this last chance settlement agreement. I don't think he ever got that chance. And the way that it was handled by this administrative judge was to say that he didn't have jurisdiction to hear it. And after having made that decision initially, he went on to hear the cases if he did have jurisdiction, which astounded me as a lawyer who tries cases in the courts in Texas. Judges there who say they don't have jurisdiction for cases just don't hear the cases. They don't go on to hear the cases on their merits. So I struggled a lot with this case and what was going on in the mind of this individual and in the mind of this board. And now that I've come before you, I'm further astounded in a way by the things that I'm hearing today. And I guess I'm learning a lot as I go through this experience. But I still believe this man deserves more than what I've heard. He is a man who has tried very hard to put forward what he believes he got when he worked hard to get this agreement. And he got what he thought he was getting was a right to put forward his arguments for having the Postal Service show that whatever he did were material violations of those specific provisions of the regulations that were listed in that agreement. And I think the failure on the part of the administrative judge to address those kinds of issues are more than just harmless error. And I think the failure of the board to look at them and to do something more than just rubber stamp what that administrative judge did should be looked at seriously. And I think the failure of this judge, this administrative judge, to take jurisdiction in this matter denies this man the right that he bargained for. Thank you very much. All right, sir. Thank you. The case is submitted. All rise. The honorable court adjourns until tomorrow morning at 10 o'clock a.m. Thank you very much.